# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| DONALD S. GLASER, | ) | CASE NO. 4:22-cv-1019 |
| | ) | |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| CORRECTION OFFICER AUSTIN SMITH, | ) | |
| et al., | ) | |
| | ) | |
| | ) | |
| DEFENDANTS. | ) | |

Defendants Correction Officer Austin Smith ("CO Smith"), Correction Officer Scott Gorby ("CO Gorby"), Correction Officer Philip Carter ("CO Carter"), Warden David Bobby ("Warden Bobby"), CoreCivic Inc., and CoreCivic of Tennessee, LLC (collectively, "CoreCivic" and, together with the other defendants, "defendants"), moved this Court to dismiss for failure to state a claim several claims alleged in the amended complaint. (Doc. No. 13 (Motion).) Plaintiff Donald S. Glaser ("Glaser") filed an opposition (Doc. No. 14 (Opposition)), and defendants filed a reply (Doc. No. 15 (Reply)). For the reasons discussed herein, defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART.

## I.    BACKGROUND[1]

Glaser filed the operative amended complaint on August 23, 2022 (Doc. No. 11 (Complaint)), alleging several claims related to a June 15, 2021 incident (the "Incident") that occurred while he was in custody at the Northeast Ohio Correctional Center ("NEOCC"). (*See*

---

[1] This recitation of facts as alleged in the amended complaint is not meant to constitute findings of fact. The facts alleged in the amended complaint are taken as true simply for purposes of resolving this motion. *See Cooper v. Pate*, 378 U.S. 546, 546, 84 S. Ct. 1733, 12 L. Ed. 2d 1030 (1964) (per curiam) (noting that "the allegations of the complaint" must be "tak[en] as true" on a motion to dismiss).

*generally id.*) CoreCivic operated NEOCC at all relevant times. (*Id.* ¶ 12.) Warden Bobby, CO Smith, CO Gorby, CO Carter, and defendants Correction Officers John and Jane Does 1 to 25 ("CO Does") were employed by CoreCivic at NEOCC at all relevant times. (*Id.* ¶¶ 13, 41.)

On June 15, 2021, while Glaser was an inmate at NEOCC, CO Smith entered his cell to perform a strip search. (*Id.* ¶¶ 19, 21.) Glaser objected to the strip search and informed CO Smith that Glaser was experiencing a mental health crisis—namely, an anxiety attack. (*Id.* ¶ 22.) CO Smith left Glaser's cell but returned shortly thereafter with CO Gorby, CO Carter, and/or CO Does. (*Id.* ¶ 23.) While Glaser continued experiencing an anxiety attack, CO Smith, CO Gorby, CO Carter, and/or CO Does (collectively, the "COs") entered Glaser's cell and assaulted Glaser while Glaser's back was turned to the COs, and then subjected Glaser to a strip search. (*Id.* ¶¶ 24, 28.)

Glaser alleges that the COs' assault and strip search "worsened [his] mental health[,]" "injured [his] left ankle, left shoulder, and cut [] Glaser near [his] left eye." (*Id.* ¶¶ 29–30.) Glaser was never given medical assistance for either his mental health crisis or his physical injuries, which resulted from the assault and strip search. (*Id.* ¶¶ 31–35.) Glaser wrote grievances for assault, excessive force, and denial of medical treatment but never received a response or remedy from any of the defendants. (*Id.* ¶ 36.) Thereafter, Glaser brought this suit against the defendants.

## II.    LEGAL STANDARD

In the context of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the sufficiency of the complaint is tested against the notice pleading requirements of Fed. R. Civ. P. 8(a)(2), which provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Although this standard is liberal, Rule 8 still requires a plaintiff to allege sufficient facts that give the defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346, 125 S. Ct. 1627,

161 L. Ed. 2d 577 (2005) (quotation marks and citation omitted). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true," to state a plausible claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct.1955, 167 L. Ed. 2d 929 (2007)).

A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.'" *Id*. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2) (second alteration in original)). In such a case, the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [and the] complaint must be dismissed." *Twombly*, 550 U.S. at 570; *see Iqbal*, 556 U.S. at 683.

A complaint need not set down in detail all the particulars of a plaintiff's claim. However, "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79 (stating that this standard requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678 (citing *Twombly*, 550 U.S. at 555). The complaint "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc*., 859 F.2d 434, 436 (6th Cir. 1988) (internal quotations marks omitted) (emphasis in original), *abrogated on other grounds by Buckhannon Bd.*

*& Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 121 S. Ct. 1835, 149 L. Ed. 2d 855 (2001).

## III.    DISCUSSION

Glaser's amended complaint alleges eleven separate counts against the defendants. Defendants have moved to dismiss all or part of six of those claims: (1) Count Two as to Glaser's mental health needs (deliberate indifference to serious medical needs in violation of 42 U.S.C. § 1983), (2) Count Five in its entirety (spoliation of evidence), (3) Count Six as against CoreCivic (failure to intervene), (4) Count Seven in its entirety (civil conspiracy), (5) Count Ten (discrimination on the basis of disability) as to the alleged violations of the Americans with Disabilities Act and Rehabilitation Act, and (6) Count Eleven in its entirety (supervisory liability for violations of civil rights pursuant to 42 U.S.C. § 1983). Defendants also move this Court to dismiss CO Does. The Court will address each in turn.

### A.    Count Two: 42 U.S.C. § 1983 Claim for Deliberate Indifference to Serious Medical Needs in Violation of the Eighth Amendment and Ohio Constitution (As Against the COs in Their Individual Capacities)

In his amended complaint, Glaser alleges that the COs violated his Eighth Amendment rights through their deliberate indifference to his serious medical needs. His claim is based on their alleged indifference to his mental health crisis and the physical injuries resulting from the assault. (Doc. No. 11 ¶¶ 48–56.) Defendants have moved to dismiss Count Two as it pertains to Glaser's mental health crisis only. (Doc. No. 13, at 3–4.[2])

While "the Constitution does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349, 101 S. Ct. 2392, 2400, 69 L. Ed. 2d 59 (1981), the Eighth Amendment's guard

---

[2] All page number references herein are to the consecutive page numbers applied to individual documents by the Court's electronic filing system.

4

against cruel and unusual punishments imposes duties on prisons officials to "provide humane conditions of confinement . . . ensure that inmates receive adequate food, clothing, shelter, and medical care, and . . . 'take reasonable measures to guarantee the safety of the inmates[.]'" *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984)). Thus, "[t]he Eighth Amendment forbids prison officials from 'unnecessarily and wantonly inflicting pain' on an inmate by acting with 'deliberate indifference' toward the inmate's serious medical needs." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)). "Prison officials' deliberate indifference violates these rights '[w]hen the indifference is manifested by . . . prison guards in intentionally denying or delaying access to medical care . . .' for a serious medical need." *Id.* (alterations in original) (quoting *Estelle*, 429 U.S. at 104).

To establish a deliberate indifference claim against a prison official for the denial of medical care, a plaintiff must satisfy a two-step framework, which includes an objective and subjective component. *Reilly v. Vadlamudi*, 680 F.3d 617, 623–24 (6th Cir. 2012) (citing *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991)); *see also Blackmore*, 390 F.3d at 895). First, under the objective component, the plaintiff must "establish the existence of a sufficiently serious medical need." *Reilly*, 680 F.3d at 624 (internal quotation marks omitted). "[A] medical need is objectively serious if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Blackmore*, 390 F.3d at 897 (emphasis omitted) (quoting *Gaudreault v. Mun. of Salem*, 923 F.2d 203, 208 (1st Cir. 1990) (further citations omitted)). Second, under the subjective component, the plaintiff must show that the prison official had "'a sufficiently culpable

state of mind[]'" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). This subjective component "should be determined in light of the prison authorities' current attitudes and conduct[.]" *Helling v. McKinney*, 509 U.S. 25, 36, 113 S. Ct. 2475, 125 L. Ed. 2d 22 (1993). A plaintiff must show that the prison official was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed and ignored that risk. *Farmer*, 511 U.S. at 837. This is a question of fact "and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 815–16 (6th Cir. 1996) (quoting *Farmer*, 511 U.S. at 842).

As to the objective component, Glaser alleges that he "suffers from mental health complications, including but not limited to anxiety." (Doc. No. 11 ¶ 129.) The parties do not dispute that Glaser alleges he experienced an anxiety attack (*see* Doc. No. 13, at 4), but neither party has cited any case law discussing whether an anxiety attack is a "sufficiently serious" medical need for Eighth Amendment purposes. It appears from the Court's own research that other courts to consider the issue have found mental health issues, including severe anxiety,[3] can rise to the level of a "sufficiently serious" medical need for Eighth Amendment purposes. *See, e.g.*, *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001) ("We have held that a prisoner's psychological needs may constitute serious medical needs . . . ." (internal quotation marks and citation omitted)); *Zimmerman v. Burge*, No. 9:06-cv-176, 2009 WL 3111429, at *8 (N.D.N.Y. Sept. 24, 2009) (collecting cases related to anxiety).

---

[3] The Court acknowledges that Glaser did not allege he suffers from "severe anxiety" in name, but the Court infers that a person who suffers from anxiety and experiences an anxiety attack, probably suffers from severe anxiety. *See* Anxiety Disorders, *Mayo Clinic*, https://www.mayoclinic.org/diseases-conditions/anxiety/symptoms-causes/syc-20350961 (last visited Mar. 8, 2023) ("Experiencing occasional anxiety is a normal part of life. However, people with anxiety disorders frequently have intense, excessive and persistent worry and fear about everyday situations. Often, anxiety disorders involve repeated episodes of sudden feelings of intense anxiety and fear or terror that reach a peak within minutes (panic attacks).").

While Glaser did not allege that a physician ever diagnosed him with anxiety or that his anxiety attack manifested with physical symptoms, Glaser did allege that he suffers from anxiety (Doc. No. 11 ¶ 129) and that he told CO Smith he was experiencing an anxiety attack when CO Smith first entered his cell. (*Id.* ¶ 22.) At this stage of the proceedings, without any guidance from Sixth Circuit case law, the Court turns to Rule 8's liberal pleading standard. The Court finds that it is at least plausible that someone who suffers from anxiety, who explicitly tells a prison official that they are suffering from an anxiety attack, might have alleged a sufficiently serious medical need. Moreover, it is plausible that even a lay person would easily recognize that medical attention is required to address such an anxiety attack. *Guglielmoni v. Alexander*, 583 F. Supp. 821, 826 (D. Conn. 1984) ("Treatment of mental disorders of mentally disturbed inmates is . . . a 'serious medical need' under *Estelle*[.]").

Turning to the subjective component, Glaser alleges that, after he told CO Smith that he was experiencing a panic attack, CO Smith left Glaser's cell and returned with the other COs. Rather than offer medical assistance or otherwise attempt to mitigate harm to Glaser, CO Smith and the other COs assaulted Glaser and performed a strip search. (Doc. No. 11 ¶¶ 22–24.) After the search was completed, none of the COs sought medical assistance for Glaser, who alleges he was obviously physically injured and now suffering from a worsened mental health crisis. (*Id.* ¶¶ 28, 31–35.)

Glaser does not allege that he ever told any of the COs (other than CO Smith) that he was suffering from a panic attack. Nor does Glaser allege that he was exhibiting physical symptoms that would make it obvious he was suffering from a panic attack either when the COs entered his cell or after they left his cell. In fact, Glaser alleges that his back was turned to the COs when they entered his cell together, which, if anything, rebuts any plausible inference that the COs could

7

readily determine at that time that Glaser was suffering an anxiety attack without any other information. (*See id.* ¶ 24.) Thus, as alleged by Glaser, CO Gorby, CO Carter, and CO Does could not have had the state of mind of deliberate indifference to his mental health crisis because there was nothing to make them aware that it was occurring. Accordingly, Glaser's claim of deliberate indifference as to his mental health crisis must be dismissed against CO Gorby, CO Carter, and CO Does for failure to state a claim. *See Winkler v. Madison Cnty.*, 893 F.3d 877, 891 (6th Cir. 2018) ("[T]he subjective component of a deliberate indifference claim must be addressed for each officer individually. So the evidence must show that the specific individual was aware of facts from which he or she could infer a substantial risk of serious harm." (internal quotation marks and citations omitted)).

As to CO Smith, Glaser alleges that he put CO Smith on explicit notice that Glaser was experiencing an anxiety attack. (Doc. No. 11 ¶ 22.) At that point, CO Smith made the decision that Glaser's condition did not require medical attention. As alleged by Glaser, instead of seeking medical assistance for Glaser's mental health needs, CO Smith recruited other COs to assist him in conducting a strip search of Glaser. (*See id.* ¶¶ 23–24.) Even after the strip search was conducted, CO Smith did not seek medical assistance for Glaser's mental health needs. (*See id.* ¶¶ 31–35.) Whether Glaser's condition did in fact require medical attention is not for the Court to decide at this juncture. Nor is it for the Court to decide right now whether CO Smith's decision to involve other COs rather than medical professionals amounts to deliberate indifference. All that matters for Glaser's claim against CO Smith to survive the motion to dismiss is that Glaser alleged facts to at least plausibly suggest that he was suffering from a serious medical condition—he did so allege—and that CO Smith exhibited deliberate indifference to that serious medical condition— he did so allege. *See Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1317 (10th Cir. 2002 ("[The]

8

allegation that [appellant] twice told Officer King that he was having a panic attack, coupled with Officer King's admission that [a]ppellant mentioned prior health problems, together signify that Officer King may have known of—and disregarded—an excessive risk to [a]ppellant's health." (emphasis omitted)). Accordingly, defendants' motion to dismiss Count Two of the complaint as to Glaser's mental health needs is denied as to CO Smith but granted as to CO Gorby, CO Carter, and CO Does.

### B. Count Five: Spoliation of Evidence (As Against All Defendants)

Defendants contend that Glaser's claim of spoliation of evidence must be dismissed because it amounts to "nothing more than threadbare recitals of the elements of the cause of action, which is insufficient to state a claim for relief." (Doc. No. 13, at 4 (citing *Iqbal*, 556 U.S. at 678 (further citation omitted)).) This Court agrees.

To state a plausible claim of spoliation of evidence under Ohio tort law, a plaintiff must allege (1) pending or probable litigation involving the plaintiff; (2) knowledge on the part of defendant that litigation exists or is probable; (3) willful destruction of evidence by defendant designed to disrupt the plaintiff's case; (4) disruption of the plaintiff's case; and (5) damages proximately caused by the defendant's acts. *Smith v. Howard Johnson Co.*, 615 N.E.2d 1037, 1038 (Ohio 1993).

Glaser's allegations surrounding the alleged spoliation of evidence are as follows:

80. The [d]efendants knew of pending or probable litigation involving Mr. Glaser.

81. Mr. Glaser requested evidence of [the COs] assault and battery and denial of medical benefits.

82. Defendants failed to provide Mr. Glaser with evidence of [the COs] assault and battery and denial of medical benefits.

83. Defendants reported the lack of video evidence of the assault on Mr. Glaser.

84. Upon information and belief, [d]efendants willfully destroyed evidence to disrupt Mr. Glaser's case.

85. Defendants' destruction of evidence disrupts Mr. Glaser's case.

(Doc. No. 11 ¶¶ 81–85 (citations omitted)).

Glaser has failed to allege sufficient facts to suggest a plausible claim against any defendant. Notably, Glaser does not allege which defendant allegedly destroyed undefined "evidence." *See Rodriguez v. Providence Cmty. Corr., Inc.*, 191 F. Supp. 3d 758, 773 (M.D. Tenn. 2016) ("A complaint that fails to impute concrete acts to specific litigants, fails to state a plausible claim." (quotation marks and citations omitted)). Further, besides one reference to "video evidence," Glaser does not allege what kind of evidence was allegedly destroyed. And as to "video evidence," Glaser does not allege that any video evidence ever existed in the first instance. What he does allege is that defendants reported the lack of such evidence. Although one might be tempted to assume there would have been video surveillance in a correctional setting, the Court is "not compel[led] . . . to conjure up unpleaded facts to support conclusory allegations[,] *Perry v. United Parcel Serv.*, 90 F. App'x 860, 861 (6th Cir. 2004), especially where, as here, even the limited facts alleged are untethered to any particular defendant(s). For these reasons, defendants' motion to dismiss Glaser's Count Five for spoliation of evidence is granted and this claim is dismissed as a matter of law. *Cf. Atwood v. UC Health*, No. 1:16-cv-593, 2018 WL 4110862, at *4 (S.D. Ohio Aug. 29, 2018) (allowing claim to proceed where plaintiff identified the type of evidence destroyed and which defendant allegedly destroyed it).

### C. Count Six: Failure to Intervene (As Against CoreCivic)

CoreCivic contends that Glaser cannot maintain a claim against it for failure to intervene to prevent violation of his Eighth Amendment rights because Glaser has failed to allege any facts to support said claim. (Doc. No. 13, at 5.) This Court agrees.

10

To plead a plausible failure to intervene claim against an officer, a plaintiff must establish that the defendant (1) observed or had reason to know that excessive force would be or was being used, and (2) had both the opportunity and the means to prevent the harm from occurring. *Crawford v. Geiger*, 996 F. Supp. 2d 603, 613–14 (N.D. Ohio 2014) (quoting *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997)). But to plead a plausible Section 1983 claim against that officer's employer based on the officer's failure to intervene, a plaintiff must allege sufficient facts to suggest a direct causal link between the employer's policy or custom and the officer's failure to intervene. *See, e.g.*, *Bowers v. Power*, No. 3:17-cv-1599, 2018 WL 1794730, at *7 (M.D. Tenn. Apr. 16, 2018) (liability for failure to protect cannot be based on a theory of *respondeat superior* but only where the employer's policies "were shown to be the 'moving force' behind the [p]laintiff's injury[.]" (citing *City of Canton v. Harris*, 489 U.S. 378, 388, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989)).

The entirety of Glaser's failure to intervene claim against CoreCivic is comprised of one paragraph in his amended complaint:

> 95. Upon information and belief, CoreCivic had reason to know that excessive force was being inflicted upon Mr. Glaser by CoreCivic employees. CoreCivic had the opportunity and the means to prevent this harm from happening.

(Doc. No. 11 ¶ 95.) Glaser has clearly failed to allege sufficient facts suggesting a plausible failure to intervene claim against CoreCivic. Glaser's amended complaint merely recites the elements of a *prime facie* failure to intervene claim against an officer without mentioning any facts relevant to CoreCivic or any of its customs or policies. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (quoting

*Twombly*, 550 U.S. 555)). As such, Glaser's failure to intervene claim against CoreCivic is dismissed as a matter of law.[4]

### D. Count Seven: Conspiracy to Deprive and Interfere with Glaser's Civil Rights Under 42 U.S.C. § 1985(3) (As Against All Defendants)

Glaser's Section 1985(3) conspiracy claim is "based on his status as an incarcerated individual with a mental disability." (Doc. No. 14, at 4.) Defendants contend that Glaser's Section 1985(3) claim must be dismissed because (1) incarcerated individuals with a mental disability is not a cognizable class and (2) even if it were, Glaser did not allege any facts to suggest he was discriminated against based on that membership. (Doc. No. 13, at 6–7.) Citing a later-rejected case from the Eastern District of New York, Glaser seems to suggest that incarcerated persons with a mental disability can be a cognizable class for Section 1985(3) purposes. (Doc. No. 14, at 4 (quoting *Selzer v. Berkowitz*, 459 F. Supp. 347, 350 (E.D.N.Y. 1978) (collecting cases), *ruling rejected in Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 194 (2d Cir. 1994) ("[Plaintiffs] invite us to hold that, in section 1985 cases, the racial or class-based animus requirement does not apply to claims of conspiracy under color of state law. We decline to do so and reject the holding in *Selzer* that racial or class-based animus need not be established in such cases.")).) Defendants insist that only classes of persons afforded heighted constitutional protection under the Fourteenth Amendment (*i.e.*, classes based on race, ethnic origin, sex, religion, or political loyalty) are cognizable classes for Section 1985(3) purposes. (Doc. No. 13, at 6 (citing among authority *Hale v. Randolph*, No. 1:02-cv-334, 2004 WL 1854179, at *6 (E.D. Tenn. Jan. 30, 2004)). This Court and controlling Sixth Circuit case law agree with the defendants.

---

[4] To the extent Glaser is alleging that CoreCivic failed to train its employees to intervene or to supervise its employees by intervening, these *Monell* claim theories are discussed *infra*.

To plead a violation of Section 1985, a plaintiff must allege that the defendants (1) conspired together, (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws, (3) and committed an act in furtherance of the conspiracy, (4) which caused injury to person or property, or a deprivation of any right or privilege of a citizen of the United States, and (5) and that the conspiracy was motivated by racial, or other class-based, invidiously discriminatory animus. *Bass v. Robinson*, 167 F.3d 1041, 1050 (6th Cir. 1999). In *Griffin v. Breckenridge*, 403 U.S. 88, 101–02, 91 S. Ct. 1790, 29 L. Ed. 2d 338 (1971), the Supreme Court noted that Section 1985(3) was not "intended to apply to all tortious, conspiratorial interferences with the rights of others" and held that the language in Section 1985(3) "requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." Although the Supreme Court has explicitly refrained from deciding whether invidious discrimination based on something besides race would be actionable under Section 1985(3), the Sixth Circuit has repeatedly held that "§ 1985(3) only covers conspiracies against: 1) classes who receive heightened protection under the Equal Protection Clause; and 2) 'those individuals who join together as a class for the purpose of asserting certain fundamental rights.'" *Bartell v. Lohiser*, 215 F.3d 550, 560 (6th Cir. 2000) (quoting *Browder v. Tipton*, 630 F.2d 1149, 1150 (6th Cir. 1980)). Neither incarcerated persons nor persons with mental disability are classes of persons who are afforded heightened protection under the Equal Protection Clause. To be sure, the Sixth Circuit has specifically held that discrimination based on mental disabilities and incarceration are not actionable under § 1985(3). *Id.* at 559 ("[Plaintiff] has no actionable claim under § 1985(3) because it does not cover claims based on disability-based discrimination or animus."); *Rose v. Leaver*, 35 F. App'x 191, 193 (6th Cir. 2002) ("[P]risoners

are not a protected class for the purposes of § 1985(3)."). As such, Glaser has failed to allege his membership in a cognizable class for Section 1985(3) purposes and his claim must be dismissed as a matter of law.

Even if Glaser had alleged his membership in a cognizable class, he has failed to allege that defendants discriminated against him because of that membership. "It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim." *Farmer v. Reece*, No. 3:19-cv-1189, 2020 WL 32512, at *2 (N.D. Ohio Jan. 2, 2020) (citations omitted). At most, Glaser alleges "the actions of [the COs], were motivated and intended to deprive [] Glaser of the equal protection of the laws." (Doc. No. 11 ¶ 99.) Glaser never alleges any action was motivated by his membership in a class of incarcerated persons with a mental disability.

For these reasons, defendants' motion to dismiss Count Seven of Glaser's complaint is granted and Glaser's claim under Section 1985(3) is dismissed as against all defendants.

### E.  Count Ten: Discrimination on the Basis of Disability in Violation of the Americans with Disabilities Act and the Rehabilitation Act (As Against All Defendants)

In Count Ten of his amended complaint, Glaser brings claims under Section 503 of the Rehabilitation Act ("RA"), Title II of the Americans with Disabilities Act ("ADA"), and the Fourteenth Amendment as against all defendants. Defendants have moved to dismiss Glaser's claims brought under the RA and ADA. (Doc. No. 13, at 7.) The Court evaluates together the sufficiency of Glaser's ADA and RA allegations because "the reach and requirements of both statutes are precisely the same." *S.S. v. E. Ky. Univ.*, 532 F.3d 445, 452–53 (6th Cir. 2008) (citation omitted).

As an initial matter, these claims must be dismissed against the COs and Warden Bobby in their individual capacities because individuals are not subject to suit under either the RA or the

ADA. *See, e.g.*, *Everson v. Leis*, 556 F.3d 484, 501 n.7 (6th Cir. 2009) ("Title II of the ADA does not, however, provide for suit against a public official acting in his individual capacity."); *Bevington v. Ohio Univ.*, 93 F. App'x 748, 750 (6th Cir. 2004) ("[Plaintiff] may not maintain an action under the RA against the individuals identified in his complaint because the RA does not impose liability upon individuals.").

> To make out a claim against CoreCivic under either the RA or the ADA, Glaser must show:

> (1) [Glaser] is a "handicapped person" under the Act; (2) [Glaser] is "otherwise qualified" for participation in the program; (3) [Glaser] is being excluded from participation in, or being denied the benefits of, or being subjected to discrimination under the program solely by reason of his handicap; and (4) [t]he relevant program or activity is receiving Federal financial assistance.

*Campbell v. Bd. of Educ. of the Centerline Sch. Dist.*, 58 F. App'x 162, 165 (6th Cir. 2003) (quoting *Doherty v. S. Coll. of Optometry*, 862 F.2d 570, 573 (6th Cir. 1988)). Glaser alleges that he suffers from mental health complications, including anxiety, which for purposes of this analysis the Court will assume qualifies Glaser as a "handicapped person" under the RA and ADA. (*See* Doc. No. 11 ¶ 129.) But Glaser's RA and ADA claims against CoreCivic fail and must be dismissed because Glaser has not alleged *any* facts to suggest that defendants discriminated against him because of his disability.

> Glaser alleges that defendants failed to provide reasonable accommodations for his disability but the only "reasonable accommodation" allegedly denied is "access to medical and other appropriate services" while incarcerated. (*Id.* ¶ 132.) To be sure, courts routinely dismiss RA and ADA claims that—like Glaser's—allege inadequate medical treatment but do not allege that the inmate was treated differently because of his or her disability. *See, e.g.*, *Bonds v. S. Health Partners, Inc.*, No. 2:15-cv-209, 2016 WL 1394528, at *6 (E.D. Ky. Apr. 6, 2016) ("[T]he ADA and Rehabilitation Act . . . afford disabled persons legal rights regarding access to programs and activities enjoyed by all, but these statutes do not provide a general federal cause of action to

15

challenge the sufficiency of the medical treatment of their underlying disabilities."); *Carrion v. Wilkinson*, 309 F. Supp. 2d 1007, 1016 (N.D. Ohio 2004) ("[Plaintiff] failed to allege that the defendants denied him the benefits of any services, programs, or activities provided for other non-disabled inmates, or that [the defendants] subjected him to discrimination because of his diabetes. Instead, he claims that he was denied a diabetic diet . . . [but this] is not the type of claim that the ADA and Rehabilitation Act were intended to cover." (internal quotation marks and brackets omitted)); *Vick v. Core Civic*, 329 F. Supp. 3d 426, 444 (M.D. Tenn. 2018) ("Simply stated, the bare allegation of inadequate medical care, even when made by a person with a serious disability, does not state a claim under the Rehabilitation Act. Put another way, the [p]laintiff is claiming that he was not properly treated for his diabetes, not that he was mistreated because of his diabetes.").

For these reasons, Glaser's RA and ADA claims against the defendants are dismissed as a matter of law.

### F.  Count Eleven: Supervisory Liability for Violations of Civil Rights Pursuant to 42 U.S.C. § 1983 (As Against CoreCivic and Warden Bobby)[5]

Glaser brings claims of supervisory liability under Section 1983 against CoreCivic and Warden Bobby. It is not clear whether Glaser brings his claim against Warden Bobby in his individual or official capacity. Any claim against Warden Bobby in his official capacity is treated as a claim against CoreCivic. *Hafer v. Melo*, 502 U.S. 21, 25, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991). Therefore, the Court will first address the Section 1983 claim as against Warden Bobby in his individual capacity and then address the claim as against CoreCivic.

---

[5] Defendants also ask for this claim to be dismissed against NEOCC. The Court acknowledges that Glaser's complaint mentions NEOCC in its Count Eleven but this seems to be an oversight because NEOCC is not named as a defendant in Glaser's amended complaint. (*See* Doc. No. 11.) Nevertheless, to the extent Glaser's amended complaint raises any claim against NEOCC, those claims are dismissed because NEOCC is a non-jural entity that is not subject to suit. *E.g.*, *De La Torre v. Corr. Corp. of Am.*, 4:16-cv-2004, 2016 WL 6893279, at *6 (N.D. Ohio Nov. 23, 2016).

### 1.  Warden Bobby

Glaser alleges that Warden Bobby supervised NEOCC at all relevant times. (Doc. No. 11 ¶ 13.) It is well established that Glaser cannot maintain a Section 1983 claim against Warden Bobby as a supervisor based on a *respondent superior* theory. Instead, Glaser must allege that Warden Bobby's own individual actions violated Glaser's constitutional rights, either through Warden Bobby's personal involvement in the Incident or by acquiescing in his subordinate's unconstitutional conduct related to the Incident. *Taylor v. Michigan Dep't of Corr.*, 69 F.3d 76, 81 (6th Cir. 1995) (plaintiff must allege facts showing that the defendant-supervisor participated, condoned, encouraged, or knowingly acquiesced in misconduct to establish liability). This, Glaser has failed to do.

Glaser's Section 1983 claim is based on the Incident—a single event—alone. Glaser does not allege that Warden Bobby was present for the Incident. Glaser does not allege that Warden Bobby was even made aware of the Incident such that he could have investigated the Incident, but did not. Glaser does not allege a single fact to suggest that Warden Bobby played any role in the Incident giving rise to this suit, besides alleging that Warden Bobby was the supervisor of the NEOCC. (*See* Doc. No. 11 ¶ 13.) Nor does Glaser allege that there were any previous incidents similar to the Incident, which would have put Warden Bobby on notice of his subordinate's actions.

All Glaser provides are vague and conclusory allegations that "[d]efendants condoned, encouraged, or participated in the alleged conduct." (Doc. No. 11 ¶ 146.) Not only are these allegations impermissibly conclusory, but Glaser's reference to a multi-headed "[d]efendants" is insufficient to plead a plausible Section 1983 claim against Warden Bobby. *See Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011) ("This Court has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what *each* defendant did to violate the

17

asserted constitutional right." (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008))); *see also Rodriguez*, 191 F. Supp. 3d at 773 ("A complaint that fails to impute concrete acts to specific litigants, fails to state a plausible claim." (quotation marks and citations omitted)). Because Glaser has failed to plead even a single fact that would suggest a plausible Section 1983 claim against Warden Bobby in his individual capacity, this claim is dismissed as a matter of law.

### 2. CoreCivic

CoreCivic, as a private prison, is a "person" subject to suit for purposes of a Section 1983 claim. *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). Courts in the Sixth Circuit engage in a two-prong inquiry when considering a municipal-liability claim. First, the court must determine whether the plaintiff has asserted the deprivation of a right guaranteed by the Constitution or federal law. *Cash v. Hamilton Cnty. Dep't of Adult Prob.*, 388 F.3d 539, 542 (6th Cir. 2004). Second, the court must determine whether the alleged deprivation was caused by the defendants acting under color of state law. *Id.*

The Court will assume for purposes of its analysis that Glaser has sufficiently alleged the deprivation of a right guaranteed by the Constitution or federal law. The Court will instead focus whether Glaser was deprived this right because of a defendant acting under color of state law. *Cash*, 388 F.3d at 542. Because CoreCivic cannot be held liable under Section 1983 on a *respondeat superior* theory, it is liable under Section 1983 for a defendant acting under color of state law "only if the challenged conduct occurs pursuant to [its] 'official policy,' such that [its] promulgation or adoption of the policy can be said to have 'caused one of its employees to violate the plaintiff's constitutional rights.'" *D'Ambrosio v. Marino*, 747 F.3d 378, 386 (6th Cir. 2014) (brackets omitted) (quoting *Monell*, 436 U.S. at 692). The "touchstone," then, is an "official policy" that causes the alleged constitutional violation. *Monell*, 436 U.S. at 690–91. A plaintiff

can make a showing of an illegal policy or custom by demonstrating either: (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision-making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations. *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013).

The allegations in the amended complaint do not point to any official policy or legislative enactment by CoreCivic that caused Glaser's claimed constitutional injuries. Instead, Glaser relies on the other three theories of *Monell* liability: ratification, inadequate training/supervision, and a custom of tolerance. (*See* Doc. No. 11 ¶¶ 145–50.)

### a.  Ratification by a Final Decision-Maker

The ratification theory of municipal liability does not require proof of a pattern or custom. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 480, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986) *rev'd on other grounds*, 475 U.S. 469, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986). Instead, ratification of a single violative act is enough for municipal liability to attach if an official acting with the final decision-making authority ratifies the unconstitutional acts of its employees by "failing to meaningfully investigate and punish allegations of unconstitutional conduct." *Wright v. City of Euclid*, 962 F.3d 852, 882 (6th Cir. 2020); *see also Wilson v. Louisville-Jefferson Cnty. Metro Gov't*, No. 3:19-cv-739, 2020 WL 981717, at *2 (W.D. Ky. Feb. 28, 2020) ("[T]he Sixth Circuit has held that municipal liability may attach when an official with final decision-making authority and a duty to know and act upon unconstitutional conduct fails to investigate or correct the unconstitutional conduct." (citing *Marchese v. Lucas*, 758 F.2d 181, 188 (6th Cir. 1985), and *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1248 (6th Cir. 1989))).

Glaser has not alleged any person with final decision-making authority was involved in or

aware of the Incident. Even assuming Warden Bobby qualifies as a final decision maker, as discussed above, Glaser does not allege that Warden Bobby played any role in the Incident. Glaser never alleges that Warden Bobby failed to investigate the Incident. Nor does Glaser allege that Warden Bobby was even aware of the Incident. Without these key factual allegations, Glaser has failed to allege a plausible *Monell* claim based on ratification by a decision maker.

### b.  Failure to train or supervise.

A *Monell* claim based on a failure-to-train theory requires a showing of that (1) CoreCivic's training program was inadequate for the tasks that employees must perform; (2) the inadequacy was the result of CoreCivic's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury. *Jackson v. City of Cleveland*, 925 F.3d 793, 834 (6th Cir. 2019) (citations and quotation marks omitted). To establish liability based on a policy of inadequate training, there must be a "history of misconduct that created 'notice that the training in this particular area was deficient and likely to cause injury.'" *Fletcher-Hope v. Louisville-Jefferson Cnty. Metro Gov't*, No. 3:18-cv-469, 2019 WL 498853, at *3 (W.D. Ky. Feb. 8, 2019) (quoting *Burgess*, 735 F.3d at 478).

Glaser alleges that CoreCivic claims to have no training manuals related to the violation of his constitutional rights (*see* Doc. No. 11 ¶ 143), but this alone is insufficient to establish a plausible claim based on a failure-to-train or supervise theory, because Glaser has not alleged any other instances of misconduct that would amount to a clear pattern of illegal activity. And because Glaser has not alleged any other instances of similar misconduct, Glaser has failed to allege that CoreCivic was on notice that its training in this particular area was deficient or likely to cause injury. *See D'Ambrosio*, 747 F.3d at 388 (holding that a county's knowledge of only three prior instances could not establish notice of habitually unconstitutional conduct in support of a failure-

to-train claim). For these reasons, Glaser cannot maintain a *Monell* claim against CoreCivic based on a failure-to-train or supervise theory.

### c.  Custom of Tolerance or Acquiescence.

To state a municipal liability claim under an "inaction" theory, Glaser must establish: (1) the existence of a clear and persistent pattern of violating constitutional rights by CoreCivic's employees; (2) notice or constructive notice on the part of CorerCivic; (3) CoreCivic's tacit approval of the unconstitutional conduct, such that its deliberate indifference in its failure to act can be said to amount to an official policy of inaction; and (4) that CoreCivic's custom was the "moving force" or direct causal link in the constitutional deprivation. *Arendale*, 519 F.3d at 599–600. Further, the evidence must demonstrate more than just "a collection of sloppy, or even reckless, oversights[.]" *Doe v. Claiborne Cnty.*, 103 F.3d 495, 508 (6th Cir. 1996). Instead, the record must show that CoreCivic "consciously never acted when confronted with its employees' egregious and obviously unconstitutional conduct." *Id.*

As mentioned above, Glaser's complaint mentions only one incident of constitutional rights being violated, his own. As such, Glaser has failed to allege any clear and persistent pattern of CoreCivic's employees violating constitutional rights. *Alsaada v. City of Columbus*, 536 F. Supp. 3d 216, 272 (S.D. Ohio 2021) ("One instance of potential misconduct is insufficient to show a clear and persistent pattern of constitutional violations." (citing *Stewart v. City of Memphis*, 788 F. App'x 341, 347 (6th Cir. 2019))). Further, Glaser has failed to allege any facts that suggest CoreCivic was on notice of a pattern of such unconstitutional conduct. For this reason, Glaser cannot maintain a *Monell* claim against CoreCivic based on a theory of custom of tolerance or acquiescence.

For all the aforementioned reasons, Glaser's *Monell* claim against CoreCivic fails as a matter of law and must be dismissed.

### G.  Claims Against CO Does

Defendants also ask this Court to dismiss all the claims (not dismissed already) that Glaser alleges against the CO Does. (Doc. No. 13, at 15.) Defendants are correct that the use of "doe defendants" is disfavored in federal court but, "it is permissible when the identity of the alleged defendant is not known at the time the complaint is filed and plaintiff could identify defendant through discovery." *See Robinson v. Doe*, No. C-1-07-729, 2009 WL 650383, at *2 (S.D. Ohio Mar. 10, 2009). This seems to be the case here. Glaser represents in his opposition to defendants' motion to dismiss that he requested information concerning the COs involved in the strip search but has not been provided any. (Doc. No. 14, at 7–8.) It is possible that discovery will yield further identities of COs involved. Thus, at this stage, the Court will not dismiss any additional claims against the CO Does.[6]

---

[6] Defendants suggest that Glaser could amend his complaint (after fact discovery begins) to add the names of any additional COs identified as involved in his claims. This is precisely what Glaser should do as soon as he identifies the CO Does. And if discovery establishes that there were no additional COs involved, or Glaser fails to identify the CO Does, then the CO Does will be dismissed.

## IV.     CONCLUSION

For the reasons set forth herein, defendants' motion to dismiss is granted in part and denied in part. The following challenged claims are dismissed:

- Count Two as to Glaser's mental health as against CO Gorby, CO Carter, and CO Does,

- Count Five in its entirety,

- Count Six as against CoreCivic,

- Count Seven in its entirety,

- Count Ten in its entirety, and

- Count Eleven as against CoreCivic and Warden Bobby.

The following challenged claims will proceed:

- Count Two as to CO Smith,

- Count Six as to the COs and any CO Does identified during fact discovery, and

- Count Eleven as to any CO Does identified during fact discovery.

**IT IS SO ORDERED**.


Dated: June 16, 2023

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT COURT**
**CHIEF JUDGE**